# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

FAROULH DORLETTE,
    *Plaintiff*,

v.

JOHNNY WU and JAMES SMYTH,
    *Defendants*.

No. 3:16-cv-318 (VAB)

## RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

On February 25, 2016, Faroulh Dorlette ("Plaintiff"), currently incarcerated by the Connecticut Department of Corrections ("DOC"), sued Johnny Wu and James Smyth ("Defendants") for violating his civil rights by failing to order him prescription eyeglasses.[1] Complaint, dated Feb. 25, 2016 ("Compl."), ECF No. 1.

On August 21, 2017, Mr. Dorlette filed an Amended Complaint. Amended Complaint, dated Aug. 21, 2017 ("Am. Compl."), ECF No. 26. On October 12, 2017, the Court permitted an Eighth Amendment deliberate indifference to medical needs claim against Defendants to proceed. Ruling on Defendants' Motion to Dismiss and Initial Review Order Re: Plaintiff's Amended Complaint, dated Oct. 12, 2017 ("Ruling and Init. Rev. Order on Am. Compl."), ECF No. 30.

On May 21, 2018, Defendants moved for summary judgment on all claims in the Amended Complaint. Motion for Summary Judgment, dated May 21, 2018 ("Mot. Summ. J."), ECF No. 44; Memorandum of Law in Support of Mot. Summ. J., dated May 21, 2018 ("Defs.' Mem."), ECF No. 44-1; Local Rule 56(a)(1) Statement ("Defs.' SMF"), ECF No. 44-2.

---

[1] Mr. Dorlette is proceeding *pro se*. On March 1, 2016, Magistrate Judge William I. Garfinkel granted Mr. Dorlette leave to proceed *in forma pauperis*. Order, dated Mar. 1, 2016, ECF No. 6.

On August 31, 2018, Mr. Dorlette opposed the motion. Plaintiff's Memorandum of Law in Opposition to Mot. Summ. J., dated Aug. 31, 2018 ("Pl.'s Opp."), ECF No. 52; Local Rule 56(a)(2) Statement, dated Aug. 31, 2018 ("Pl.'s SMF"), annexed to Pl.'s Opp. at 31.

For the reasons explained below, Defendants' motion is **GRANTED**, and Plaintiff's claims are **DISMISSED**.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Before March 15, 2016, Mr. Dorlette was incarcerated by DOC at the MacDougall-Walker Correctional Institution ("MacDougall-Walker"). On March 16, 2016, he was transferred to Corrigan-Radgowski Correctional Center ("Corrigan"). Defs.' SMF ¶ 2. He has been transferred to several other facilities in both Vermont and Connecticut while this case has been pending, *see* ECF Nos. 8, 15, 23, 27 & 35, but remains in DOC custody at this time.[2]

Dr. Smyth is an optometrist employed by Correctional Managed Health Care ("CMHC") since 2003. Affidavit of James Smyth, dated May 21, 2018 ("Smyth Aff."), annexed as Ex. G to Defs.' SMF, ECF No. 44-10. He allegedly worked at four correctional facilities: MacDougall-Walker, Osborn Correctional Institution, Northern Correctional Institution, and Enfield Correctional Institution. *Id.* ¶ 6.

Dr. Wu is a physician and was the Director of Medical Services for CMHC from June 2012 to March 2017. Affidavit of Johnny Wu, dated May 21, 2018 ("Wu Aff."), annexed as Ex. J to Defs.' SMF, ECF No. 44-13, ¶¶ 2–3.

CMHC is a division of the University of Connecticut Health Center that manages a contract to provide medical care to DOC inmates. *Id.* ¶ 4.

---

[2] In a March 14, 2019 telephone conference in another case currently before this Court, Mr. Dorlette reported a recent transfer to the Garner Correctional Institution in Newtown, Connecticut. *See Dorlette v. Iozia*, No. 3:16-cv-1882 (VAB), ECF No. 47.

### A. Factual Allegations

On July 28, 2015, Mr. Dorlette (then an inmate at MacDougall-Walker) submitted a written request for an eye exam and prescription eyeglasses. Defs.' SMF ¶ 4; Pl.'s SMF ¶ 4. In that request, Mr. Dorlette wrote:

> I would like a new eye exam. I am having eye pain and I believe the pain is a result of not having glasses (my vision is at least as bad as 20/800 as I am near-sighted; however I am also experiencing blurry vision and double vision, plus strain and head-aches when attempting to read and/or write). I would like to get new glasses. Thank you.

Inmate Request, dated Jul. 28, 2015, annexed as Ex. D to Defs.' SMF ("Defs.' Ex. D"), ECF No. 44-7.

On August 5, 2015, Mr. Dorlette was scheduled for an eye exam. Defs.' SMF ¶ 5; Pl.'s SMF ¶ 5; *see also* Defs.' Ex. D (stating "Eye Exam Scheduled," signed and dated 8/5/2015).

On August 11, 2015, Mr. Dorlette had his eyes examined by Dr. Smyth. Defs.' SMF ¶ 1; Pl.'s SMF ¶ 1; Smyth Aff. ¶ 10. Although he had been prescribed eyeglasses in the past, Mr. Dorlette arrived at his appointment with Dr. Smyth without eyeglasses or contact lenses. Defs.' SMF ¶ 6; Pl.'s SMF ¶ 6; Smyth Aff. ¶ 11.

In his Amended Complaint, Mr. Dorlette alleged: (1) that he informed Dr. Smyth that his glasses were missing and that DOC staff were responsible, Am. Compl. ¶ 10; (2) that he informed Dr. Smyth that he was in "extreme pain in his eyes and experiencing headaches and difficulty reading, writing, being mobile, etc.," *id.* ¶ 11; (3) that Dr. Smyth confirmed these were expected symptoms from Mr. Dorlette not having his glasses, *id.* ¶ 12; (4) that Dr. Smyth has been conducting regular eye exams of Mr. Dorlette since 2005, *id.* ¶¶ 13–14; (5) that Dr. Smyth "had identified the plaintiff's vision as near-sighted and to be 20/800, which is 'nearly blind,'" *id.* ¶ 9; (6) that Dr. Smyth was responsible for ordering him new glasses but failed to do so,

causing him "to suffer for several months," *id.* ¶ 15; and (7) that Mr. Dorlette sent Dr. Smyth several requests "expressing his continued experience of pain (eye and head-aches) and other disabilities, such as inability to read, write, etc.," but that Dr. Smyth failed to act on them, knowingly allowing Mr. Dorlette to suffer in violation of his Eighth Amendment rights, *id.* ¶ 16.

In an affidavit opposing summary judgment, Mr. Dorlette now states that he explained to Dr. Smyth that his eyeglasses had been missing for weeks in connection with an incident at Corrigan-Radgowski Correctional Center ("Corrigan") in Uncasville, Connecticut. Affidavit of Faroulh Dorlette, dated Aug. 31, 2018 ("Pl.'s Aff."), annexed to Pl.'s Opp. at 43, ¶ 5. Mr. Dorlette allegedly told Dr. Smyth that he had been suffering from double and blurry vision, migraines, difficulty reading, and sensitivity to light due to the absence of his eyeglasses. Pl.'s Aff. ¶¶ 5, 10, 12. Mr. Dorlette claims that Dr. Smyth confirmed to him that these were all symptoms associated with not wearing his glasses and that once he received the glasses, his headaches and eye-aches should dissipate. *Id.* ¶ 12. Mr. Dorlette further claims Dr. Smyth "shined a light in my eyes which cause[d] me pain and to flinch and which [Dr.] Smyth characterized as sensitivity." *Id.* Mr. Dorlette claims that he asked Dr. Smyth to order him the same style of glasses that he had previously been issued, and that he also asked him for a copy of his prescription. Pl.'s Aff. ¶ 15. Mr. Dorlette alleges that Dr. Smyth gave him that prescription, but did not inform him he would not also be ordering him a state-issued pair of glasses. *Id.*

After the appointment, Mr. Dorlette claims that he made multiple inmate requests and administrative grievances regarding the status of his eyeglasses. Pl.'s Aff. ¶¶ 10, 11, 14, 17; *see* Pl.'s Exs. 3-8, annexed to Pl.'s Opp., ECF No. 52, at 52–61. One of these, he claims, was addressed to Dr. Wu on October 27, 2015.[3] Pl.'s Aff. ¶ 17.

---

[3] The alleged complaint to Dr. Wu is illegible as scanned and filed with the Court. *See* Ex. 6 to Pl.'s Opp., ECF No. 52, at 58.

Defendants dispute these accounts. Dr. Smyth claims that he did not observe anything abnormal about Mr. Dorlette's eyes that would have alerted him to pain or anything requiring immediate action. Smyth Aff. ¶¶ 15, 17. Although Mr. Dorlette may have experienced difficulty seeing distant objects, Dr. Smyth did not consider him to be nearly blind, and Mr. Dorlette could still read information in close proximity. *Id.* ¶ 16. He also claims that Mr. Dorlette "did not complain of pain." *Id.* ¶ 17.

Dr. Smyth contends that he recommended a follow-up appointment in two years and explained that, under DOC policy, "the state will not supply eyeglasses if an inmate has asked for the prescription to have eyeglasses mailed into the facility" and that Mr. Dorlette would need to "choose either state issued eyeglasses or eyeglasses from outside of the facility[.]" Smyth Aff. ¶¶ 19, 24. He says Mr. Dorlette elected to obtain his glasses from outside DOC using the written prescription Dr. Smyth gave him; as a result, he "did not have him select an eyeglass frame or fit him for eyeglasses provided by" DOC. Smyth Aff. ¶ 34.

Dr. Smyth allegedly wrote down giving Mr. Dorlette the prescription. Smyth Aff. ¶ 25. Those notes do not indicate any report of eye pain or other symptoms, but simply include the results of the eye exam and state that "Rx given to inmate for personal glasses." *See* Ex. A to Defs.' SMF, filed Feb. 26, 2019 ("Medical Records"), ECF No. 54, at 084. They also do not indicate that Mr. Dorlette selected any frame, or that any order was placed. *Id.*

Dr. Smyth claims that, following the appointment, no one ever contacted him about Mr. Dorlette's prescription. Smyth Aff. ¶¶ 27–28. He claims not to have handled inmate request forms personally; instead, the nursing staff processed the forms and placed inmates on the sick call list. *Id.* ¶ 33.

Dr. Wu, the other Defendant in this case, allegedly never examined Mr. Dorlette. Defs.' SMF ¶ 38; Pl.'s SMF ¶ 28. He allegedly has no knowledge of any issues regarding the ordering or delivery of Mr. Dorlette's eyeglasses, and allegedly never received any correspondence from Mr. Dorlette regarding any medical issues. Wu Aff. ¶¶ 10–14.

Rikel Lightner, a Registered Nurse and the Health Services Administrator at MacDougall-Walker—and ultimate custodian of medical records there—states that there is no record of any Inmate Requests or Health Services Reviews concerning Mr. Dorlette's eyeglasses prescription or vision problems after July 28, 2015. Affidavit of Rikel Lightner, dated May 21, 2018 ("Lightner Aff."), annexed as Ex. B to Defs.' SMF, ¶¶ 24–26; *see also* Defs.' Ex. D; Inmate Requests, annexed as Ex. E to Defs.' SMF ("Defs.' Ex. E"), ECF No. 44-8.

On March 16, 2016, Mr. Dorlette was transferred to Corrigan. Defs.' SMF ¶ 2.

On April 12, 2016, Mr. Dorlette submitted an Inmate Request stating that he had been "writing follow-up requests regarding the ordering of state glasses" and requesting: (1) that glasses be made and sent to him; and (2) that he be scheduled to speak with an eye surgeon to determine whether he was a candidate for eye surgery. Inmate Request Form, dated Apr. 12, 2016, annexed as Ex. 8 to Pl.'s Opp., ECF No. 52, at 61. In that form, he stated that his eyes were "noticeably straining and causing me migraines and other pains including obstruction and or interference with reading and writing, etc., and nausea" and that he was "experiencing humiliation and psychic trauma with people making fun of my lazy eyes, etc." *Id.*

On April 20, 2016, Mr. Dorlette allegedly was "scheduled to see the eye doctor" at Corrigan. *Id.*

On April 26, 2016, Mr. Dorlette had his eyes examined by a provider at Corrigan. Medical Records at 082. That provider (whose name does not appear in this record) wrote out a

Physician's Order for a pair of glasses of the lens type and style "High Index Plastic." *Id.* The glasses were shipped by Masscor/Optical Division on May 13, 2016. *Id.* at 083. Later that month, Mr. Dorlette received state-issued eyeglasses. Pl.'s Aff. ¶ 19.

### B. Procedural History

On February 25, 2016, Mr. Dorlette sued the Defendants under 42 U.S.C. § 1983, and alleged violations of the Fourteenth and Eighth Amendments to the U.S. Constitution. Compl.

On March 1, 2016, Magistrate Judge William I. Garfinkel granted Mr. Dorlette leave to proceed *in forma pauperis*. Order, dated Mar. 1, 2016, ECF No. 6.

On October 19, 2016, the Court issued an Initial Review Order under 28 U.S.C. § 1915A. Initial Review Order, dated Oct. 19, 2016, ECF No. 9. The Court dismissed Mr. Dorlette's claims under the Fourteenth Amendment, and his claim for money damages, but allowed his Eighth Amendment claim of deliberate indifference to medical needs to proceed against Defendants in their individual and official capacities. *Id.* at 5.

On March 27, 2017, Defendants moved to dismiss the Complaint. Motion to Dismiss, dated Mar. 27, 2017, ECF No. 22.

On June 15, 2017 and July 11, 2017, the Court extended Mr. Dorlette's deadline to respond to the motion in light of his recent transfer to a different DOC facility and change of address. Orders, dated June 15, 2017 and July 11, 2017, ECF Nos. 24–25.

On August 21, 2017, Mr. Dorlette filed an Amended Complaint. Am. Compl.

On October 12, 2017, the Court denied Defendants' motion to dismiss, without prejudice to filing again in light of the Amended Complaint, and issued a new Initial Review Order with respect to the Amended Complaint. Ruling and Init. Rev. Order on Am. Compl. The Court

permitted Mr. Dorlette's Eighth Amendment deliberate indifference to medical needs claim against Defendants to proceed. *Id.* at 8.

On May 4, 2018, Defendants moved for permission to file Exhibit A to their motion for summary judgment, containing Plaintiff's relevant medical records, under seal. Motion to Seal Plaintiff's Medical Records, dated May 4, 2018, ECF No. 40. The Court granted that motion on May 7, 2018. Order, dated May 7, 2018, ECF No. 41.

On May 21, 2018, Defendants moved for summary judgment on all claims in the Amended Complaint. Mot. Summ. J.; Defs.' Mem.; Defs.' SMF. Defendants did not, however, separately file Exhibit A under seal at that time.

On August 31, 2018, Mr. Dorlette opposed the motion. *See* Pl.'s Opp.; Pl.'s SMF.

On February 25, 2019, the Court ordered Defendants to file Exhibit A to their motion—medical records which the Court granted Defendants leave to file under seal, but which were not actually filed on the docket—by March 1, 2019. Order, dated Feb. 25, 2019, ECF No. 53. The Court also gave Mr. Dorlette until March 12, 2019 to supplement his opposition. *Id.*

On February 26, 2019, Defendants filed the medical records with the Court. Sealed Document, dated Feb. 26, 2019, ECF No. 54.

Mr. Dorlette did not file any amendment or supplement his opposition before the March 12, 2019 deadline.

## II.     STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may

defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law.") (citing *Anderson*, 477 U.S. at 248).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

Where one party is proceeding *pro se*, a court must read his papers liberally and interpret them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted). Despite this liberal interpretation, however, "[u]nsupported allegations do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003).

## III. DISCUSSION

Defendants argue that they are entitled to summary judgment because (1) Mr. Dorlette failed to exhaust his administrative remedies before commencing this action;[4] (2) Mr. Dorlette's condition was, objectively, not "sufficiently serious"; (3) Mr. Dorlette cannot satisfy his burden of showing that Dr. Smyth acted with a subjectively reckless state of mind; and (4) Mr. Dorlette cannot demonstrate that Dr. Wu was personally involved in his care, or that he was responsible for a policy that led to the delay in his receiving eyeglasses.[5]

---

[4] Defendants raised the affirmative defense of exhaustion in their Answer to the Amended Complaint. Answer, dated Sept. 18, 2017, ECF No. 28, at 4.

[5] Because the Court concludes that Mr. Dorlette cannot prevail on his Eighth Amendment claims based on the evidence in the record, the Court does not consider the defendants' alternative argument that they are entitled to qualified immunity. *See* Defs.' Mem. at 15–20.

While the Court disagrees that Mr. Dorlette failed to exhaust his administrative remedies, Mr. Dorlette has failed to create a genuine issue of material fact as to either the objective or subjective prong of the deliberate indifference standard, or as to Dr. Wu's personal involvement in his care.[6]

### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") of 1996, 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory for any prisoner challenging the conditions of his confinement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory.") (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)).

Exhaustion under the PLRA requires "proper exhaustion," meaning full compliance with administrative procedures and deadlines. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Ruggiero v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006). "An 'untimely or otherwise procedurally defective administrative grievance' . . . does not constitute proper exhaustion." *Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011) (quoting *Woodford*, 548 U.S. at 83-84). To properly exhaust a claim, a prisoner must comply with the prison grievance procedures,

---

[6] Defendants also argue that they are entitled to judgment on Mr. Dorlette's "negligence claims." Defs' Mem. at 15. Although Mr. Dorlette alleged that Defendants acted with "gross negligence" in response to his medical complaints, Am. Compl. ¶ 22, the Court, in reviewing the Amended Complaint, did not permit any "negligence claims" to proceed. *See* Ruling and Init. Rev. Order on Am. Compl. at 8. Nevertheless, any state law negligence claim against Defendants would be barred by Connecticut General Statutes § 4-165. *See* CONN. GEN. STAT. § 4-165; *see also Poe v. Leonard*, 282 F.3d 123, 145 (2d Cir. 2001) (negligence insufficient to state claim under § 1983).

including utilizing each step of the administrative appeal process. *Id.* (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

DOC Administrative Directive 8.9 outlines the exhaustion procedure for inmates seeking review or otherwise challenging conduct by health care professionals:

> There are two types of Health Services Review: Diagnosis and Treatment, and Review of an Administrative Issue. Under Administrative Directive 8.9, an inmate seeking either type of review must first attempt to seek informal resolution before filing a formal request for a Health Services Review. If an inmate is not happy with the informal resolution of his or her issue, he or she may file an Inmate Administrative Remedy Form seeking either (a) a review of a medical decision regarding the diagnosis or treatment, or lack of a diagnosis or treatment, of a medical condition; or (b) a review of a practice, procedure, policy or administrative provision, or the alleged improper conduct of a health services provider. If an inmate is not satisfied with the response to his or her request for review of a procedure or practice, he or she may appeal the decision within ten business days of receiving the decision.
>
> Once an appeal is filed, the health services provider or the designated facility health services director must decide the appeal within fifteen business days of receiving the appeal. If the issue being raised relates to a health services policy of the Department, the inmate may appeal to the DOC Director of Health Services within ten business days of receiving the decision from the health services provider or designated facility health services director.

*Minnifield v. Dolan*, No. 3:14-CV-1580 (VAB), 2017 WL 1230840, *6 (D. Conn. Mar. 30, 2017) (citations and internal quotation marks omitted); *see* DOC Admin. Dir. 8.9, annexed as Ex. C to Defs.' SMF, at 4–5.

Defendants allegedly have submitted all of the Inmate Request forms filed by Mr. Dorlette between July, 2015 and March 16, 2016, the date of his transfer from MWCI to Corrigan. *See* Lightner Aff. ¶¶ 24–25; Defs.' Ex. E. They claim that Mr. Dorlette's Inmate Request on July 28, 2015, seeking an appointment with the optometrist, represents the only

administrative remedy documentation Mr. Dorlette filed concerning his eyeglasses, vision problems, or Dr. Smyth. *See* Lightner Aff. ¶ 26; Defs.' Ex. D.

Mr. Dorlette has submitted requests he allegedly wrote in the months following his August 2015 appointment, including a copy of one Health Services Review dated November 25, 2015 concerning his eyeglasses. Pl.'s Opp. at 5; Pl.'s Aff. ¶¶ 10–11; Health Services Review, dated Nov. 25, 2015, annexed as Ex. 3 to Pl.'s Opp., ECF No. 52, at 52. Unlike DOC Administrative Directive 9.6, which is utilized for non-medical related inmate grievances, Directive 8.9 does not provide an inmate with an opportunity to appeal as a matter of course should the recipient of the Health Services Review fail to respond. *See Carter v. Revine*, No. 3:14-CV-1553 (VLB), 2017 WL 2111594, *8 n.8 (D. Conn. May 15, 2017).

It is unclear why the Health Services Review does not appear in MacDougall-Walker's records. Nevertheless, Mr. Dorlette has provided sufficient evidence to create a genuine issue of material fact as to whether Mr. Dorlette exhausted his administrative remedies. The Court therefore denies summary judgment on this basis.

### B. Deliberate Indifference Claim Against Dr. Smyth

Defendants argue that the evidence shows no genuine issue of material fact with respect to Mr. Dorlette's deliberate indifference claim and that they are entitled to judgment as a matter of law.

The Court agrees.

"Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Snipes v. DeTella*, 95 F.3d 586, 590–91 (7th Cir.

1996)). Deliberate indifference to a serious medical need becomes an Eighth Amendment violation when an official both knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

There are both objective and subjective components to the deliberate indifference standard. *Hathaway v. Coughlin (Hathaway II)*, 99 F.3d 550, 554 (2d Cir. 1996) (citing *Hathaway v. Coughlin (Hathaway I)*, 37 F.3d 63, 66 (2d Cir. 1994)).

Objectively, "the alleged deprivation must be 'sufficiently serious,' in the sense that 'a condition of urgency, one that may produce death, degeneration, or extreme pain' exists." *Id.* (citing *Hathaway I*, 37 F.3d at 66). The Second Circuit has also recognized that "the inability to engage in normal activities" may form the basis for a cognizable claim regarding inadequate medical care. *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *see Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (double vision and loss of depth perception due to prior head injury may not inevitably entail pain, but can "readily cause a person to fall or walk into objects, and Koehl alleged that he has experienced such occurrences, and has suffered injuries as a consequence," and thus are sufficient to allege objective element of deliberate indifference claim).

"When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim." *Smith*, 316 F.3d at 185 (internal quotation marks and citations omitted). It is the "particular risk of harm faced by a prisoner due to the

challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." *Id.* (citations omitted). "For example, the failure to provide treatment for an otherwise insignificant wound may violate the Eighth Amendment if the wound develops signs of infection, creating a substantial risk of injury in the absence of appropriate medical treatment." *Id.* (citing *Chance,* 143 F.3d at 702).

Subjectively, "the charged official must act with a sufficiently culpable state of mind," *id.* (citing *Hathaway I*, 37 F.3d at 66), meaning that the charged official must act or fail to act while "actually aware of a substantial risk that serious inmate harm will result," *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

While Mr. Dorlette has raised some issues, there is no genuine issue of material fact as to whether he can substantiate the objective element required for a deliberate indifference claim. He cannot.

The objective component of Mr. Dorlette's Eighth Amendment claim is the approximately eight-month delay in receiving his prescription eyeglasses. At the motion to dismiss stage, the Court found Mr. Dorlette's allegations plausibly stated the objective element because he alleged "that the deprivation of his eyeglasses has caused him headaches and has rendered him unable to read or write." Ruling and Init. Rev. Order on Am. Compl. at 7.

At the summary judgment stage, however, Mr. Dorlette has not produced any evidence, beyond his own statements, that the eight-month delay in receiving his eyeglasses caused him to suffer the harms he alleges. *See Charter Practices Int'l, LLC v. Robb*, No. 3:12-CV-1768 (RNC), 2017 WL 4366717, *5 (D. Conn. Sep. 30, 2017) (nonmoving party cannot rely on self-serving affidavit alone to create triable issue of fact). Unlike in *Koehl*, no permanent damage has been

15

alleged, let alone substantiated. *See Koehl*, 85 F.3d at 87 ("[h]is left eye, which had shifted as a result of his head injury, has now shifted fully into the corner of the socket and is almost sightless, and he has experienced headaches."). Mr. Dorlette has not identified any medical records or other documentation supporting the notion that the delay in receiving his eyeglasses had a serious effect on his health. Moreover, although he alleges having filed complaints about any such concerns, no such complaints have been identified by the Defendants. *See* Lightner Aff. ¶ 26 ("Aside from the July 28, 2015 [request], there are no inmate request forms from Faroulh regarding his eyes, eyeglasses or an examination for the period of time after the August 11, 2015 examination and before he moved to a different facility on March 16, 2016.").

After nearly one year of discovery, Mr. Dorlette has failed to support his claim that not having his glasses impacted his daily activities with evidence sufficient to create a triable issue of fact. *See Davidson v. Desai*, 817 F. Supp. 2d 166, 188 (N.D.N.Y. 2011) ("[A]lthough Plaintiff maintains that his inability to obtain proper eyeglasses required Plaintiff to rely on his outdated prescription lenses, resulting in eyestrain and headaches, Plaintiff fails to allege that such symptoms impaired Plaintiff's daily activities . . . The evidence in the record thus fails to establish a material issue of fact as to whether Plaintiff, as a result of delays in obtaining proper prescriptive lenses, suffered from a serious medical condition.") (internal citation omitted). In addition to other undisputed evidence in the record showing that Mr. Dorlette wrote several Inmate Requests during this period, *see* Defs.' Ex. E, Mr. Dorlette, when he allegedly still lacked glasses, wrote and filed his initial Complaint against Defendants on February 25, 2016, as well as the Complaint in another lawsuit currently pending before this Court, *Dorlette v. Tyburski*, No. 3:15-cv-1856 (VAB), which he wrote and filed on December 22, 2015. *See Davidson*, 817 F. Supp. 2d at 188 n.6 ("The court notes that although Plaintiff complained on April 10, 2001, of

problems with his near vision and reading, Plaintiff continued to research and write in support of his then-pending legal actions. Nor does Plaintiff assert that inadequately corrected vision caused him any delays or interfered with his pursuit any legal actions.").

A plaintiff may not "rest on his allegations . . . to get to a jury without 'any significant probative evidence tending to support the complaint.'" *Anderson*, 477 U.S. at 249 (quoting *Cities Serv.*, 391 U.S. at 290). "[T[he plaintiff must present affirmative evidence in order to defeat . . . summary judgment." *Id.* at 257; *see also Felder v. Filion*, 368 F. App'x 253, 256 (2d Cir. 2010) (upholding summary judgment where plaintiff failed to produce evidence demonstrating that the deprivation of his eyeglasses caused him sufficiently serious harm).

Even if he had sufficiently supported his claims with respect to the objective element, the undisputed record does not support a claim under the subjective element: namely, that Dr. Smyth failed to act in response to that need, as Mr. Dorlette had alleged in his Amended Complaint. Am. Compl. ¶ 15 ("Defendant Smyth, upon his August 2015 diagnosis of the plaintiff, was responsible for ordering . . . the corrective lenses for the plaintiff, which he failed to do, allowing plaintiff to suffer for several months."). In fact, it supports the exact opposite conclusion: that Dr. Smyth wrote him a prescription that could be used to acquire new glasses.

It is therefore immaterial whether or not Mr. Dorlette asked Dr. Smyth to additionally order state-issued glasses, and whether or not Dr. Smyth informed him that he could only order him state issued glasses or give him a prescription, but not both. Mr. Dorlette argues that Dr. Smyth "should have" ordered him state-issued eyeglasses because that would have been the "most reasonable response" to the eye exam. Pl.'s Opp. at 8–9. But the point remains: Dr. Smyth acted. He did not "fail to act." At best, Dr. Smyth acted negligently in treating Mr. Dorlette. But that is insufficient, as a matter of law, to establish deliberate indifference. *See Salahuddin*, 467

F.3d at 280 ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent.") (citations omitted); *Chance*, 143 F.3d at 703 ("[N]egligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim.") (citing *Estelle*, 429 U.S. at 105–06); *see also Hernandez v. Keane*, 341 F.3d 137, 145–46 (2d Cir. 2003) ("The evidence as to the treatment of plaintiff's hand suggests at most several acts of negligence over a prolonged period. That is not enough to support an Eighth Amendment violation.") (citations omitted).

Accordingly, because Mr. Dorlette has failed to produce affirmative evidence demonstrating a material issue of fact as to either the objective or subjective elements of a deliberate indifference claim, the Court grants summary judgment on this basis.

### C. Claims Against Dr. Wu.

Because Mr. Dorlette has failed to demonstrate any material issue of fact as to Dr. Smyth's deliberate indifference, he cannot sustain a claim against Dr. Wu flowing from that alleged indifference. In addition, Mr. Dorlette has failed to show that Dr. Wu had any personal involvement in the delay of receiving eyeglasses. *See* Defs.' Mem. at 13–14.

A plaintiff who sues a supervisory official for monetary damages must allege that the official was "personally involved" in the constitutional deprivation in one of five ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official failed to take action in response to information regarding the unconstitutional conduct. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

Mr. Dorlette has produced no evidence showing Dr. Wu's involvement or knowledge in the ordering or delivery of his eyeglasses in this case. He broadly asserts that, "as the Director of Medical Services, [Dr. Wu] was responsible for overseeing the overall medical treatments of inmates in [DOC] custody, creating policies and procedure[s], etc." Pl.'s Aff. ¶ 18; *see also* Pl.'s Opp. at 18 (Dr. Wu "held the position of Medical Director and as such was responsible for the oversight of medical policy and procedure regarding the manner in which the medical facilities and staff in the [DOC] operated, to include . . . the manner in which eye care is . . . provided"). But the fact that Dr. Wu held a supervisory title does not establish his personal involvement in the alleged constitutional violation such that Mr. Dorlette could recover damages from him. *See Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (claim for monetary damages against supervisory official requires showing more than linkage in prison chain of command); *Abrams v. Waters*, No. 3:17-CV-1659 (CSH), 2018 WL 691717, *6 (D. Conn. Feb. 2, 2018) (dismissing claims against defendants based solely on their supervisory roles in prison facility).

Accordingly, the Court grants summary judgment on this basis.

## IV. CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment is **GRANTED**, and Plaintiff's deliberate indifference claims are **DISMISSED**.

The Clerk of the Court is respectfully directed to enter judgment for Defendants and to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 20th day of March, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE